19616

Velma Bagwell STEVENS, Appellant, v. PLANTATION PIPE LINE COMPANY, Respondent.

(196 S. E. (2d) 117)

Louis P. Howell, Esq., of *Ward, Howell, Barnes & Long,* of Spartanburg, *for Appellant,*

392

*Messrs. Love, Thornton, Arnold & Thomason,* of Green-
ville, and *George Dean Johnson, Jr.,* of Spartanburg, *for
Respondent,*

April 18, 1973.

BRAILSFORD, Justice.

This is an action for fraud and deceit in the procurement
by grant of a right-of-way for a pipeline across plaintiff's
property and of an anticipatory release of all damages which
plaintiff might sustain as a result of the installation of the
line. At the conclusion of plaintiff's testimony the court
granted defendant's motion for a nonsuit. Plaintiff has ap-
pealed from this ruling.

> We must determine if the evidence was sufficient to
> raise a jury issue as to whether defendant's agent
> fraudulently tricked plaintiff into signing the docu-

ments in question on terms to which she did not assent. We review the evidence in the light of the familiar rule that it and all inferences reasonably arising therefrom must be viewed most favorably to plaintiff.

The negotiations concerning the right-of-way were between plaintiff's seventy-four-year-old husband, George Stevens, and defendant's agent, one S. B. Watkins, Jr., who made known the company's desire for a fifty-foot right-of-way adjacent to an existing pipeline crossing plaintiff's land. After several discussions, Mr. Stevens advised the agent that his wife would grant the right-of-way on the terms discussed for $8,138.00. Sometime later Mr. Watkins called at the Stevens home and stated that he was prepared to close the transaction. He presented a right-of-way grant and a receipt and release both on mimeographed forms. After reading the papers, Mr. Stevens objected that the terms did not accord with his understanding of the proposal in several particulars. Perhaps most importantly, the grant allowed the defendant to exercise rights on plaintiff's land outside of the fifty-foot right-of-way, and the release precluded plaintiff from recovery of damages for any injury caused thereby. Upon these objections being voiced, Mr. Watkins made the following insertion by pen in the body of the receipt and release:

"Timber will be cut & placed along R/W for owner use. Terraces & pastures will be replaced to present conditions as nearly as practicable after construction. This Release covers R/W herein granted only."

He then resubmitted the modified instrument to Mr. and Mrs. Stevens who read it and expressed their satisfaction with it. Mrs. Stevens handed the receipt and release back to him at the table where he had written the conforming conditions and he pointed out to her where she should sign both documents. She did so, and the two men signed as witnesses. The unsigned copy of the receipt and release which was left with Mrs. Stevens contained the handwritten modifications,

but the signed copy which Watkins took with him did not. This discrepancy did not become known until after the work was in progress and Mr. Stevens objected to the manner in which it was being conducted.

Mr. and Mrs. Stevens testified that she intended to sign the modified receipt and release and thought that this was the paper presented for her signature. We quote briefly from the testimony of Mr. Stevens:

"The Court: . . . Mr. Stevens, what did you and what did your wife think you were signing when she executed this paper?

"A. We thought we were signing the paper that he had written on, which was the agreement.

"Q. . . . (T)hat is the one that you objected to?

"A. This one right here is the one we objected to.

"Q. Right, but you went ahead and signed it after you objected to it, didn't you?

"A. Yes, but listen, he had those papers fixed over there and we didn't know when we handed that paper, he said 'Sign here', and we thought we were signing this one here."

The defendant's answer admits that before signing the papers plaintiff made certain "requests" of its agent which he incorporated into a copy of the receipt and release. But the answer alleges that this was done simply as a memorandum of her "requests," to be carried out by defendant so far as practicable but not to become part of the written agreement. However, it is reasonably inferable from the testimony of plaintiff and her husband that the agent deliberately deceived them into believing that the receipt and release which he presented for her signature had been modified to conform to their understanding of the agreed terms.

The circuit court, evidently conceiving that the fraud charged was in the falsity of the representations incorporated by the agent into the copy of the agreement, held that these were mere future promises the breach of which would not

support an action for fraud. This is a misconception of the complaint and of plaintiff's testimony. The gravamen of the charge is that defendant's agent obtained the execution of the contract which plaintiff had rejected by falsely representing that he was presenting the conformed contract for her signature.

The defendant's brief is divided into two parts. The first part, relying upon such cases as *Davis v. Upton*, 250 S. C. 288, 157 S. E. (2d) 567 (1967), adopts the inapposite rationale of the circuit court referred to above. The second part invokes a declaration contained in the right-of-way grant that defendant's agent "is without authority to make any agreement in regard to the subject matter hereof which is not expressed herein, and that no such agreement will be binding on the Grantee." Defendant argues that this provision put plaintiff on notice that the agent had no "authority to vary the terms of the agreement." The short answer is that there is no agreement to be varied until execution; and that any provision written into either of the two simultaneously executed instruments prior to execution would have become part of the integrated grant.

Apparently to the point that plaintiff was bound to read the grant and take notice of this supposed limitation on the agent's authority, the defendant cites *Gordon v. Fidelity & Casualty Co. of N. Y.*, 238 S. C. 438, 120 S. E. (2d) 509 (1961), and quotes the following familiar passage therefrom:

"We have consistently followed the rule that ordinarily one cannot complain of fraud in the misrepresentation of the content of a written instrument when the truth could have been ascertained by reading the instrument, and one entering into a written contract should read it and avail himself of every reasonable opportunity to understand its content and meaning." 238 S. C. at 446-447, 120 S. E. (2d) at 513.

The defendant nowhere relies upon the strong line of cases found in 10 West's South Carolina Digest, Fraud,

Key No. 22(1) (1952), of which *Gordon* is an example, to the point that plaintiff is precluded from recovery because she failed to read the very instrument which she signed. We have nevertheless considered these cases and have concluded that they do not bar plaintiff's recovery as a matter of law. The plaintiff and her husband were attentive to their duty to read the instruments presented to her, and she refused to sign until the receipt and release had been satisfactorily modified. It is inferable from the evidence that she signed the instrument reasonably believing that she knew its contents. Whether she had the right to rely on the agent's implied representation that the paper to which he guided her pen was the one to which she had assented was an issue for the jury.

Reversed and remanded for a new trial.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.